UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK DAVIS,

               Petitioner,              Case Number 19-12207

v.                                         Honorable David M. Lawson

MARK MCCULLICK,

               Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

A Michigan jury convicted petitioner Derrick Davis of assault and firearm crimes following an altercation at a basketball court in Detroit, Michigan that ended in a shooting. Davis contended that he was misidentified as the shooter, a contention that the jury rejected. After unsuccessfully appealing his convictions in the state courts, he filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his attorney performed deficiently by not challenging the identification procedures before trial and failing to call a witness that might have helped his defense. Davis also contends that the verdict was not supported by sufficient evidence and that it was against the great weight of the evidence. However, the state courts' rejection of these arguments did not contravene or unreasonably apply federal law. The Court, therefore, will deny the petition.

I.

The Michigan Court of Appeals adequately summarized the facts of the case in its opinion on direct appeal. They are presumed to be correct here. *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> This case arises from a shooting that occurred at an athletic center in Detroit on July 26, 2015. On that date, Jeremy Keahey, Staysic Keahey, and Eric Sanford played a game of pick-up basketball against another team, which included defendant. During the game, Staysic threw an arm and inadvertently scratched defendant, leading to a brief argument. However, the game continued and ultimately defendant's team lost. After the game, a physical fight broke out when defendant's team refused to vacate the court. In the brawl that followed, Staysic was punched and stomped into unconsciousness. Eric recalled hitting defendant during the fight, after which defendant said: "I'm about to kill this n***a." Eric saw defendant walk towards a car, and defendant returned with a gun that he fired at Eric. Eric jumped into his own car to drive away and defendant again shot at him. Jeremy saw defendant shooting at Eric's car, and Jeremy began to run toward a nearby playscape. As he ran, Jeremy looked back and saw defendant aiming the gun at him. Jeremy was shot in the back and is now paralyzed. After the shooting, police found a revolver at the scene.
>
> Defendant fled the athletic center, but he was arrested shortly after the shooting as he was walking nearby. Defendant matched the description of the shooter, he had a "busted lip," and he told the arresting officer that he had been struck during a fight over a basketball game. Defendant also indicated that there had been a shooting, but he told the officer that he "didn't do this." Defendant was released while the investigation was ongoing and he fled to West Virginia, where he was eventually apprehended in March 2016. Both Eric and Jeremy identified defendant as the shooter in a photographic line-up and at trial. Staysic confirmed defendant's participation in the basketball game and the fight, but because he was on the ground and unconscious, Staysic did not see the shooting. The jury convicted defendant as noted above.

*People v. Davis*, No. 335155, 2018 WL 2269952, at * 1 (Mich. Ct. App. May 17, 2018).

Davis was sentenced to prison terms of 10 to 15 years for assault and lesser sentences for the other crimes. His convictions were affirmed on appeal. *Ibid.*; *leave to appeal denied* 503 Mich. 875, 917 N.W.2d 663 (2018) (table).

Davis filed a timely petition for a writ of habeas corpus that alleges the following grounds:

I. Mr. Davis was denied his Sixth Amendment right to the effective assistance of counsel by his attorney's failure to properly investigate and subpoena a key defense witness for trial.

II. Mr. Davis was denied his right to the effective assistance of counsel when his attorney failed to file a pre-trial motion to suppress the overly suggestive lineup and subsequent in-court identification.

> III. Mr. Davis was convicted with insufficient evidence and as such was deprived of his right to due process by the erroneous conviction which was based on dubious eyewitness identification and testimony.
>
> IV. Mr. Davis's conviction was against the great weight of the evidence and has resulted in an erroneous conviction and a blatant violation of Mr. Davis's right to due process of law.

Pet. at 5, 7, 8, ECF No. 1, PageID.5, 7, 8.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for

obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

A.

Davis argues that he was denied the right to the effective assistance of counsel because his trial attorney failed to subpoena Kenneth Williams as a witness for trial, who could have cast doubt on whether Davis was the shooter. Davis also criticizes his trial attorney for not filing a pretrial motion to suppress the identification testimony of Eric Sanford and Jeremy Keahey on the ground that pretrial identification procedures used by the police were unduly suggestive.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of competent counsel. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted). And where the challenged conduct amounts to legitimate trial

strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). Under AEDPA, the standard for obtaining relief under *Strickland* is very difficult to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

1.

The Michigan Court of Appeals rejected Davis's first argument relating to the failure to subpoena witness Williams because he was not made known to trial counsel until the eve of trial, and not producing him was not "attributable to some failing by defense counsel." *Davis*, 2018 WL

2269952, at *4. That court also found that Davis could not show prejudice because there was nothing in the record showing what Williams actually would have said if called as a witness. *Ibid.* The background facts describing how this issue arise were summarized by the court of appeals as follows:

> In this case, at the beginning of the last day of trial, defense counsel asked for a continuance because Williams was not available to testify that day. Williams had not been endorsed as a witness by either side and he had not been subpoenaed. Instead, defense counsel informed the trial court on the last day of trial that Williams "magically" called her the night before on her personal cell phone at approximately 5:40 p.m. Defense counsel did not provide an affidavit from Williams regarding the proposed substance of his testimony. However, according to defense counsel, Williams told her on the phone that he was involved in the basketball game and he was present for the shooting. More specifically, defense counsel stated that Williams told her that "he was standing close" to defendant "when the shots were fired and that he did not see [defendant] shooting a gun," rather, "the gunshots came from another direction" and defendant "wasn't the shooter."

> Although Williams claimed to have been a witness to the shooting that occurred more than a year before trial, the prosecutor stated that she had no knowledge of him and that he was not mentioned in any of the documents relating to the case. Likewise, defense counsel had no idea why Williams had not come forward in the year since the shooting or even earlier during the trial. Defense counsel also could not say with certainty how Williams obtained her phone number; but, she believed it was given to him by defendant's family. Based on her conversation with Williams the night before, defense counsel requested a continuance on the last day of trial because Williams was not present in court to testify as "he could not get the time off from his job with such short notice." However, despite this request for a continuance, defense counsel acknowledged that she did not have Williams's address in order to subpoena him for trial, she did not indicate when or where she intended to serve him a subpoena without knowing his address, and she did not say when she expected that he would be available to testify.

> The trial court denied defendant's request for a continuance. In doing so, the trial court "assum[ed]" that Williams was "legitimate" despite the fact that Williams made no effort to contact the police about the shooting. Nevertheless, given the sparsity of the available information, including the fact that defense counsel did not even know Williams's address and had no apparent means of serving him a subpoena, the trial court declined to grant a continuance. The trial court suggested that defense counsel's investigator or defendant's family members, who had apparently identified Williams as a potential witness, obtain more information, such as Williams's address, so that the trial court could "more properly address" the request for a continuance. Ultimately, the trial court ruled that "until I'm provided

>with far more information than I have now, any request for a continuance is denied." No additional information was provided to the trial court, and the jury returned its verdict later that day.

*Davis*, 2018 WL 2269952, at *2-3.

The court acknowledged that the record did not answer all the questions, such as the extent of trial counsel's investigation, or why Williams was not made known to the defense or prosecution until the eleventh hour. But the court could not find that Davis had shown that the late revelation was caused by defense counsel's deficient investigation instead of, "for example, negligence by defendant in failing to tell counsel about Williams." *Id.* at *4. And the court determined that proof of prejudice was wanting because Davis "never produced Williams or an affidavit from Williams, meaning that there is no record evidence of what testimony Williams would have offered if called as a witness." *Ibid.* There was also a measure of inconsistency in the record that was created by information offered by Davis's attorney on appeal. Appellate counsel filed an affidavit recounting her telephone conversation with Williams, who "told her that he was not present for the actual shooting but instead left the scene when someone other than defendant said 'something about going to get a gun.'" *Id.* at *4 n.2. The court concluded that because Williams did not see the shooting, his testimony could not have affected the outcome of the trial. *Ibid.*

These holdings are entirely consistent with governing federal law. A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not provide some indication of the evidence that counsel should have unearthed and presented. *See Hutchison v. Bell*, 303 F. 3d 720, 748 (6th Cir. 2002). Here, Davis has not provided any substantiation that Williams's testimony would have helped his defense. There is nothing in the record from Williams himself, and the representations by trial and appellate counsel are at odds with each other on whether Williams had even seen the altercation. And Davis has not even suggested a course of action trial counsel should have followed or shown how her

investigation or preparation was inadequate. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002). Finally, because Davis did not provide the Michigan courts or this Court with an affidavit from Williams describing his proposed testimony and willingness to testify, the Court is left with nothing but Davis's own allegations, conclusions, and argument. That alone cannot support a claim for habeas relief. *Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Without some measure of proof, Davis is unable to establish that he was prejudiced by counsel's failure to investigate or to call Mr. Williams as a witness to testify at trial. *Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Another point: the trial court record and the Michigan Court of Appeals's decision strongly suggest that the reason trial counsel never spoke with Williams is that Davis never told her at any time before trial that Williams was a potential defense witness. A trial attorney cannot be deemed to have performed deficiently by not interviewing or calling "unknown witnesses." *Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013); *see also Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004). And because the record leaves considerable doubt over whether Williams even saw the shooting, trial counsel would have had no obligation to present evidence that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004).

2.

Witnesses Eric Sanford and Jeremy Keahey identified Davis in a photographic lineup, which Davis insists was unduly suggestive because his photo was the only one in the array showing a person wearing a tank top. Trial witnesses testified that the shooter was wearing a "beater" tank during the basketball game. *Davis*, 2018 WL 2269952, at *5. Davis argues that trial counsel should have filed a pretrial motion to suppress the in-court identification of those witnesses. The Michigan Court of Appeals did not find the six-photo array unduly suggestive, since "[a]ll six

participants in the array are African–American males, all of the men are wearing their hair in 'twists,' and two of the men have visible tattoos on their chests"; no physical characteristics distinguished Davis from the others; all of the individuals depicted were wearing casual clothing suitable for athletics; and neither of the witnesses said that they selected Davis based on his clothing. *Ibid.* And because the identification procedure was not unduly suggestive, the court believed that there was no need to determine if the witnesses had an independent basis for identifying Davis at trial, and counsel did not perform deficiently by not filing a pretrial motion to suppress the identification. *Id.* at *5.

Again, this holding did not contravene or unreasonably apply federal law. The Due Process Clause requires suppression of eyewitness identification evidence only "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012) (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)). A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 114 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test). The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967).

A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive. It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id.* at 240 n.31. If a

defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is no substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Even when there is undue suggestibility in a pretrial identification process, suppression is not called for if the in-court identification is reliable. "The factors affecting reliability include 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Sexton v. Beaudreaux*, --- U.S. ---, 138 S. Ct. 2555, 2559 (2018) (quoting *Manson*, 432 U.S. at 114); *see also Perry*, 565 U.S. at 239; *Biggers*, 409 U.S. at 199-200.

Looking at the six photos in the array, *see* ECF No. 9-11, PageID.711-17, it is reasonable to conclude that the display does not unduly suggest Davis as the object of identification. All of the participants in the lineups were similar in age, race, complexion, hair style, and size. The only discrepancy among the photos is that Davis was the only person wearing a tank top. Should Davis's trial lawyer nonetheless have filed a motion to challenge the pretrial identification procedure? Probably. There was a colorable basis for the motion — the distinguishing clothing that mapped onto the assailant's mode of dress at the time of the assault — and there was no strategic downside to litigating the question. *See Roe v. Flores–Ortega*, 528 U.S. 470, 481 (2000) (holding that decisions as to what defenses to assert are presumed to be a matter of trial strategy, although such decisions must be reasonable). However, that does not necessarily render counsel's performance deficient. Passing up a marginally meritorious motion in favor of devoting time and

-10-

energy to other efforts can be viewed as a decision within "prevailing professional norms." *Wiggins*, 539 U.S. at 521. At the very least, that conclusion is one on which reasonable minds might differ. It cannot be said, therefore, that the Michigan courts' conclusion that counsel did not perform deficiently contravened or unreasonably applied federal law.

But even if Davis could establish deficient performance, constitutionally ineffective assistance is shown only when counsel's conduct deprives a defendant of a substantial defense. *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). In this context, Davis would have to show that the Michigan courts' finding that the photo array was not unduly suggestive *and* that the lineup procedure did not taint the in-court identification constituted an unreasonable determination of the facts. But that cannot be established here, because those conclusions easily fall within the realm of what fair-minded jurists could find from the evidence in this record. *See Searcy v. Berghuis*, 549 F. App'x 357, 364-65 (6th Cir. 2013) (holding that a photo lineup, in which the habeas petitioner's photograph was in the middle of six-photograph array and he was the only individual pictured wearing a button-down, open-collared shirt, while the other individuals wore t-shirts, was not unduly suggestive where there was no indication "a witness suggested the clothing Searcy wore in the picture supported or influenced the witness's identification"); *United States v. Soto*, 124 F. App'x 956, 965 (6th Cir. 2005) (holding that a photo array from which the defendant was identified was not impermissibly suggestive, where the defendant's photo was sharper and clearer than the others, the background of his photo was lighter than the others, and in his photo he was wearing a white shirt while all the others were in dark clothing).

\* \* \*

Davis is not entitled to relief based on his ineffective-assistance-of-counsel claims.

B.

Davis also argues that his convictions were not supported by sufficient evidence. The Michigan Court of Appeals did not agree. It pointed to evidence that the defendant made a threat to kill following the basketball game, retrieved a gun from a car, and fired it. Keahey was struck in the back and the bullet paralyzed him. At trial, both Sanford and Keahey identified Davis as the shooter. Based on that evidence, the court concluded that "there was clearly sufficient evidence to establish defendant's identity as the shooter and to support defendant's convictions." *Davis*, 2018 WL 2269952, at * 6.

That decision faithfully tracked controlling federal law. It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443

U.S. at 319. That rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Davis does not dispute that there was sufficient evidence on the elements of the specific assault and firearm offenses. But under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (*citing People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

The state courts' conclusion that the testimony of two eyewitnesses to the shooting was sufficient evidence of the petitioner's guilt accords with federal law. Davis was positively identified by two eyewitnesses, both at the pretrial photographic identification and later at trial. That is sufficient evidence for a factfinder to find guilt. *United States v. Sullivan*, 431 F.3d 976, 983-84 (6th Cir. 2005). Davis attacks the quality of the eyewitness identifications. But that argument amounts to asking this Court to reweigh the credibility of the witnesses. It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Davis also argues that that there was insufficient evidence to convict him because the police did not recover fingerprints or other forensic evidence. However, the "lack of physical evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x. 871, 882 (6th Cir. 2016).

Davis is not entitled to habeas relief on this claim.

C.

Davis raised a related claim in the Michigan Court of Appeals — that his convictions are against the great weight of the evidence — and he raises it again here. That court rejected Davis's contention, which focused mainly on the quality of the identification testimony. That argument has no traction here, because it is a claim grounded in state law, and a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to a habeas petitioner on claim that the jury's verdict was against the manifest weight of the evidence).

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: April 29, 2022